UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ALBERT J. WILKINSON,

                              Plaintiff,

          - against -

NEW YORK STATE, STATE UNIVERSITY
OF NEW YORK AT STONY BROOK, JOHN
PETER GERGEN in his official and individual
capacities, and MARVIN H. O'NEAL in his
official and individual capacities,

                              Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
2:18-CV-4148 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

On July 20, 2018, Plaintiff Albert J. Wilkinson, proceeding *pro se*, initiated this employment discrimination action against New York State, the State University of New York at Stony Brook (the "University"), and two employees of the University—John Peter Gergen and Marvin H. O'Neal (the "Individual Defendants"). Plaintiff alleges violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), Section 1983 of the Title 42 of the United States Code, 42 U.S.C. § 1983 ("§ 1983"), and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.* (*See* Amended Complaint ("Am. Compl."), Dkt. 11, at 3.) Currently before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint in its entirety. (*See* Defendants' Motion to Dismiss, Dkt. 20.) For the reasons stated herein, Defendants' motion is granted in part and denied in part.

# BACKGROUND

## I.        Factual Allegations[1]

Plaintiff has worked in the University's Undergraduate Biology program (the "Biology program") for 19 years. (Am. Compl., Dkt. 11, at 8.) Since 2004, he has held the title of Assistant Curator. (*Id.*) As an Assistant Curator, Plaintiff is responsible for, *inter alia*, "working with faculty to design and implement laboratory exercises, setting up labs with equipment, and preparing and maintaining lab supplies." (*Id.*) Plaintiff was granted tenured status in 2011. (*Id.*) As of the filing of his complaint in July 2018, Plaintiff was 55 years old. (*Id.* at 7.) Defendant Marvin H. O'Neal became a lecturer/lab coordinator for the Biology program in approximately 2007. (*Id.* at 8.) Defendant Peter Gergen replaced non-party Gene Katz[2] as the director of the Biology program in 2010. (*Id.* at 9.)

This action stems from various actions taken by the University, Gergen, and O'Neal that were allegedly hostile and discriminatory toward older Biology program staff members. Kristine Seitz and Desiree de Figueroa, two older employees, along with Plaintiff, were referred to by Katz and O'Neal as a "cabal."[3] (*Id.* at 25.) The three employees were also accused of trying to "bring down the department" and "sabotage" the labs. (*Id.*) Although Gergen never used the word "cabal," he referred to Plaintiff, Seitz, and de Figueroa at least once, on or about April 23, 2018, as "toxic." (*Id.*) Immediately after O'Neal became a lecturer/lab coordinator in 2007, he "ma[de]

---

[1] The facts recited in this section are based on the allegations in the Amended Complaint, which the Court accepts as true for purposes of Defendants' motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] Plaintiff alleges that Katz was removed for Katz's and O'Neal's unprofessional behavior. (*Id.* at 9.)

[3] The Amended Complaint fails to provide a date or date range when O'Neal allegedly made the "cabal" comment.

it known" that he intended to "replace the old dead wood in the department with young fresh faces." (*Id.* at 8−9.) O'Neal also regularly said, "[Plaintiff] should not have a job here" and "I don't know why [Plaintiff] is even here, he doesn't do anything." (*Id.* at 5.)

### A.    Defendant Gergen's Removal of Plaintiff's Supervisory Duties

Approximately one year after Gergen became the director, Gergen relieved Plaintiff of his supervisory duties in the Biology program for engaging in "inappropriate relationships." (*Id.* at 9.) Plaintiff did not ask for an explanation or file a complaint regarding this action. (*Id.*)

### B.    Denial of Promotion to Plaintiff

In March 2015, Plaintiff applied for the position of Assistant Director of the Biology program. (*Id.*) He received a first-round interview but was not invited to the second round. (*Id.*) Plaintiff was more qualified than Nancy Black, who was eventually chosen for the position. (*Id.*) Plaintiff had more relevant business experience, was more senior, and had supervisory experience that Black did not have. (*Id.* at 10.) Black only had four years of administrative experience, but Gergen and the University's Human Resources office ("HR") tailored the qualifications for the position for Black's benefit and only required four years of experience. (*Id.*)

Plaintiff filed two anonymous complaints with the University's Internal Audit office ("Internal Audit"). (*Id.* at 9−10.) Plaintiff filed the first complaint prior to the interviews, alleging that Gergen had pre-selected Black and had assembled a biased hiring committee, including two members who said, before the applications had been submitted, that Black should get the job. (*Id.* at 9−10.) Because of Plaintiff's complaint, HR invalidated the hiring committee Gergen had assembled, but allowed him to select a second committee, which was "equally biased in Ms. Black's favor." (*Id.* at 10.) After Plaintiff was rejected for a second-round interview, Plaintiff filed the second complaint with Internal Audit. (*Id.* at 10−11.) Both of Plaintiff's complaints alleged "unfair hiring practices, nepotism, cronyism[,] and favoritism." (*Id.* at 14−15.)

### C. Plaintiff's 2016 Classification and Compensation Review Request

On February 2, 2016, Plaintiff requested a classification and compensation review[4] in an email to Gergen and Mary Bernero, Plaintiff's direct supervisor. (*Id.* at 11, 14.) On April 27, 2016, Gergen informed Plaintiff that he had submitted Plaintiff's request to the Dean's office for approval. (*Id.* at 11.) Based on several email exchanges with the union and the University's Labor Relations Office ("Labor Relations") between September 23 and November 2, 2016, Plaintiff discovered that Gergen never submitted Plaintiff's request to the Dean's office and, as a result, prevented Plaintiff from receiving an equity pay review and the pay increase he had requested. (*Id.* at 11−13.)

### D. Plaintiff's Association with De Figueroa's Equal Employment Opportunity Commission ("EEOC") Complaint

On July 23, 2015, Desiree de Figueroa filed a complaint with the EEOC. (*Id.* at 14.) In August 2016, Plaintiff gave de Figueroa permission to disclose to the EEOC the fact that Plaintiff had filed "two Internal Audit complaints about systemic employment discrimination involving the unfair hiring of Nancy Black for the Assistant Director position." (*Id.*)

### E. Plaintiff's 2015-2016 Performance Evaluation

On June 13, 2016, Plaintiff reviewed his 2015-2016 performance evaluation, which was rated "outstanding." (*Id.* at 13.) Gergen then revised Plaintiff's evaluation to include negative ratings for "poorer performance" and "unprofessional comments." (*Id.*) Even though Plaintiff refused to sign the revised evaluation, Gergen forced Bernero, Plaintiff's immediate supervisor, to submit the revised version to HR as part of Plaintiff's permanent record. (*Id.*) Plaintiff then complained to Lisa Willis, Plaintiff's union representative, and Labor Relations rescinded

---

[4] A classification and compensation review is the process through which a University employee can request and receive a pay increase. (*See id.* at 16.)

Gergen's revised evaluation, and recorded the original version as the evaluation of record. (*Id.*) However, Labor Relations refused to send a written decision to Plaintiff. (*Id.*) On August 17, 2016, Gergen told Plaintiff that he would revisit the issues he had with Plaintiff the following year. (*Id.* at 14.)

### F.     Plaintiff's 2017 Classification and Compensation Review

On February 10, 2017, Gergen informed Plaintiff that he wanted to submit a classification and compensation review for Plaintiff—which would facilitate Plaintiff receiving a pay increase—and asked Plaintiff to submit proof that a review was justified. (*Id.* at 15.) On March 1, 2017, Gergen informed Plaintiff that the Dean had approved Plaintiff's request for a review. (*Id.* at 16.) However, on July 17, 2017, Gergen informed Plaintiff that he would not submit Plaintiff's request because "all personnel transactions at the University [were] currently suspended." (*Id.*)

### G.     Plaintiff's 2016-2017 Performance Evaluation

On June 14, 2017, Bernero met with Gergen and O'Neal, at which time they "changed" Plaintiff's 2016-2017 evaluation "indicat[ing] poorer performance than the previous year." (*Id.* at 16−17.) Gergen and O'Neal also added "flippant" comments to Plaintiff's evaluation. (*Id.* at 16.) On June 16, 2017, Bernero told Plaintiff that she was "unable to make any changes" to Plaintiff's evaluation, even though the direct supervisor should have the "final say" in the evaluation process, according to the union contract. (*Id.* at 17.) On June 20, 2017, Bernero admitted to Plaintiff that she was "bullied by Gergen and O'Neal into accepting the changes they had made to [Plaintiff's] evaluation, and that she was afraid to change them back because Gergen would hurt her on her own evaluation." (*Id.*) Plaintiff told Bernero on June 27, 2017 that he would submit a formal rebuttal to his evaluation to the Dean's office, and on July 17, 2017 Bernero confirmed receipt of the formal rebuttal. (*Id.*)

Plaintiff contacted the union about filing a grievance about "the interference and breach of confidentiality regarding [his] 2016-2017 evaluation." (*Id.* at 18.) The union informed Plaintiff on July 20, 2017 that it would not represent Plaintiff in his grievance. (*Id.* at 18−19.) On July 31, 2017, Plaintiff filed a grievance against the University, complaining that his supervisors "had failed to follow the procedure for evaluation, personnel files, and confidentiality with respect to [his] 2016-2017 performance evaluation." (*Id.* at 19.) At the hearing held in response to Plaintiff's grievance, Gergen admitted that O'Neal attended the meeting at which Plaintiff's 2016-2017 evaluation was discussed. (*Id.*) On September 11, 2017, Labor Relations denied Plaintiff's grievance. (*Id.*) Labor Relations's decision regarding the denial contained "outright lies." (*Id.*) Plaintiff could not appeal the decision because an appeal can only be undertaken by the union, which had declined to represent Plaintiff in the underlying grievance. (*Id.*)

### H. Plaintiff's Complaint to the Office of Institutional Diversity and Equity ("OIDE")

On July 26, 2017, Plaintiff filed a complaint with the University's OIDE, claiming that Gergen and O'Neal had created a hostile work environment in an effort to make Plaintiff resign, so that they could replace Plaintiff with a younger employee. (*Id.* at 18.) Plaintiff reported an incident on August 18, 2017, where Gergen had become agitated and angrily told Plaintiff in "a threatening posture," "you don't get to tell me what's right." (*Id.*) Plaintiff also witnessed, later that day, that Gergen became angry and physically threatened Kristine Seitz by waving his finger in her face and forcing her backward into a wall. (*Id.*) Seitz ended up crying and fled to a nearby office. (*Id.*)

On September 21, 2017, the OIDE informed Plaintiff that his complaint could not be substantiated and was closed without any corrective action. (*Id.*)

## I. Biology Program "Grid" Assignments

Beginning in September 2017, Gergen replaced most of Plaintiff's field biology duties that Plaintiff had performed for O'Neal's class with menial tasks, such as receiving packages, answering the door, washing benches, and "having to ask the younger staff members if they needed help." (*Id.* at 20.) Gergen created a spreadsheet ("grid") in August 2017 that included specific times when Plaintiff was supposed to report downstairs to complete menial tasks and to assist the younger staff with their work. (*Id.*) Because of the grid assignments, Plaintiff was subjected to micro-management and was kept from completing his primary duties. (*Id.*)

## J. Defendants Gergen's and O'Neal's More Favorable Treatment of Younger Biology Program Employees

Beginning in July 2017, Gergen and O'Neal gave two younger Biology program staff members access to a faculty lounge/lab, but did not invite Plaintiff. (*Id.* at 24.) On September 14, 2017, Bernero, at Gergen's request, directed Plaintiff and Seitz to help Alexandra Scavelli, a younger Biology program staff member, with her work, which Scavelli easily could have completed by herself. (*Id.* at 20−21.)

On October 4, 2017, Plaintiff was tasked to pith frogs for a Biology program lab class, which conflicted with his grid assignment. (*Id.* at 21.) When Plaintiff told Bernero about the conflict, Bernero told Plaintiff to stay upstairs and pith the frogs. (*Id.*) Bernero later asked Plaintiff to go downstairs and help Scavelli cut plastic tubing.[5] (*Id.*) Scavelli then reported Plaintiff for missing his morning grid assignment. (*Id.*) On October 23, 2017, Plaintiff faced the same conflict and again asked Bernero for guidance. (*Id.*) Bernero told Plaintiff to pith the frogs and report

---

[5] It was unclear from the complaint whether Plaintiff went downstairs and did what he was asked to do. (*Id.*)

downstairs afterwards. (*Id.*) Plaintiff was afraid that the younger staff would report him again. (*Id.* at 21−22.)

On October 26 and 27, 2017, Bernero refused to ask the Biology program's younger staff to cover some of Plaintiff's work in his absence, even though Plaintiff had "always" been told to cover for the younger staff in their absence. (*Id.* at 22.)

On January 29, 2018, Bernero directed Plaintiff, but not the younger Biology program staff, to cover Seitz's work during her absence. (*Id.*) On the same day, the two younger staff gave Plaintiff computer access to their work notes and directives, so that, in the event that they were absent, Plaintiff could check what needed to be done. (*Id.* at 22−23.) The two younger staff members were "never made to be responsible for [Plaintiff's] work." (*Id.* at 23.)

On February 9, 2018, Scavelli asked Plaintiff for help lifting lab equipment from a shelf to the bench, even though the equipment easily could have been moved by one person. (*Id.*) Plaintiff complied because he was afraid that Scavelli would report him to Gergen if he refused. (*Id.*) Plaintiff complained to Bernero, but nothing was done. (*Id.*)

On August 22, 2018, Christina Giordano, who had been a Biology program employee for only three years, was invited by Gergen to give input on a new hire, while Plaintiff, who had 18 years of experience, was not invited. (*Id.* at 26.)

At unspecified times, younger Biology program staff were given first preference when taking vacation, and their requests for time-off were approved on the spot. (*Id.* at 22.) In addition, at some unidentified point in time, Gergen directed Bernero to notify everyone whenever Plaintiff took a day off, but "this action [was] not reciprocal" and Plaintiff was "not notified when other faculty and staff [were] out." (*Id.* at 4.) Unlike Plaintiff, who was subject to the grid assignments—requiring him to "shuttle from floor to floor[] and from room to room"—the

younger employees did all of their work on the downstairs level.  (*Id.* at 24.)  The younger staff were also given an additional desk to use in a room downstairs.  (*Id.*)

### K.      Threatened Change to Plaintiff's Work Hours

On July 3, 2018, Christina Giordano, a younger staff member, at Gergen's direction, told Plaintiff that his work hours would be changed from days to nights.[6]  (*Id.* at 25.)

### L.      Plaintiff's Additional Assignments

On August 26, 2018, Gergen told Plaintiff that Plaintiff would be responsible for unlocking all of O'Neal's classroom doors each morning, according to a new policy for the lab rooms.  (*Id.* at 25−26.)  The new policy only applied to O'Neal's lab rooms; the other Biology program instructors received keys and unlocked their own lab rooms.  (*Id.* at 26.)

### M.      Defendants Gergen's and O'Neal's Refusal to Communicate

On August 28, 2018, Bernero informed Plaintiff that because O'Neal and Gergen were angry about Plaintiff's filing of the instant lawsuit, they would no longer interact with him directly.  (*Id.* at 26–27.)  The lack of communication made Plaintiff's work more difficult.[7]  (*Id.* at 26.)

## II.     Procedural History

On September 29, 2017, Plaintiff filed a complaint with the EEOC.  (*Id.* at 28.)  He received a right to sue letter on April 24, 2018.  (*Id.*)  On July 20, 2018, Plaintiff, proceeding *pro se*, filed his complaint in this matter.[8]  (*See* Complaint, Dkt. 1.)  On September 14, 2018, Plaintiff filed an

---

[6] There is no indication in the complaint that this shift-change ever occurred.  Rather, the complaint seeks injunctive relief in the form of stopping Gergen and O'Neal from "threatening to change [Plaintiff's] work hours from days to nights."  (*Id.* at 30.)

[7] Nancy Black, who had been promoted to Assistant Director of the Biology program over Plaintiff, but is not a defendant in this case, also did not respond to an email that Plaintiff sent to her, Gergen, and O'Neal on September 11, 2018.  (*Id.* at 27.)

[8] This case was originally assigned to the Honorable Joan M. Azrack.  (*See* August 2, 2018 Order, Dkt. 6.)

amended complaint with additional factual allegations to support his claims; this is the operative complaint. (*See* Am. Compl., Dkt. 11.) On September 18, 2018, Defendants filed a motion for a pre-motion conference to dismiss Plaintiff's Amended Complaint for lack of jurisdiction and failure to state a claim. (*See* Defendants' motion for pre-motion conference, Dkt. 12.) On October 26, 2018, Judge Azrack held a pre-motion conference with the parties and set a briefing schedule for Defendants' motion to dismiss. (*See* Oct. 26, 2018 Minute Entry, Dkt. 14.) On November 1, 2018, Judge Azrack stayed the briefing schedule and referred this case to the Court Annexed Mediation Advocacy Program. (*See* Nov. 1, 2018 Order.) The parties attended a mediation session on January 16, 2019 (*see* Dec. 26, 2018 Selection of Mediator), but mediation was unsuccessful (*see* Jan. 17, 2019 Report of Mediation Unsettled). In light of the failed mediation, Defendants renewed their motion to dismiss on January 24, 2019. (Defendants' Motion to Dismiss, Dkt. 16.) On March 25, 2019, this case was reassigned from Judge Azrack to the undersigned. (*See* Mar. 25, 2018 Docket Entry.) On April 1, 2019, Defendants' motion was fully briefed. (*See* Defendants' Motion, Dkt. 20.)

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *see Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012), but "need not credit conclusory statements unsupported by assertions of facts[,] or legal conclusions . . . presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Additionally, a court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Id.* at 405–06 (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)). At the same time, the Court is obligated to liberally construe Plaintiff's claims and arguments in light of his *pro se* status. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." (citation and internal quotation marks omitted)).

At the pleadings stage, a court must limit its inquiry to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by reference, and "documents that, while not explicitly incorporated into the complaint, are 'integral' to [the] plaintiff's claims and were relied upon in drafting the complaint." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d at 404 (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991)). Thus, in employment discrimination cases, courts may consider filings with state administrative

agencies or the EEOC to the extent that a complaint necessarily rests upon them. *See Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) ("'[I]t is proper for this court to consider the plaintiff's relevant filings with the EEOC' and other documents related to the plaintiff's claim . . . so long as those filings are . . . 'integral to' and 'solely relied' upon by the complaint." (brackets omitted) (quoting *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565–66 (2d Cir. 2006))).

## DISCUSSION

Plaintiff's Amended Complaint asserts the following claims: (1) discrimination, hostile work environment, and retaliation in violation of the ADEA; (2) due process violations under § 1983; and (3) discrimination, hostile work environment, and retaliation in violation of the NYSHRL. (*See* Am. Compl., Dkt. 11, at 3.) Each of Plaintiff's claims are asserted against the Individual Defendants in both their official and individual capacities, as well as against the University and New York State. (*Id.* at 1.) Defendants move to dismiss all of Plaintiff's claims.[9] (*See generally* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, Dkt. 20-5.)

---

[9] Though Defendants have expressly moved to dismiss all of Plaintiff's claims, Plaintiff's opposition brief only mentions retaliation and violation of due process rights and does not address most of Defendants' arguments. (*See* Plaintiff's Brief, Dkt. 20-6, at 6–7.) "[The] Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed. Application of this proposition is, however, tempered by this Court's discretion . . . ." *Lipton v. Cty. of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004). Considering Plaintiff's *pro se* status, the Court will not deem his claims abandoned. *Rosen v. N.Y.C. Dep't of Educ.*, No. 18-CV-6670 (AT), 2019 WL 4039958, at *3 n.4 (S.D.N.Y. Aug. 27, 2019) (declining to deem *pro se* plaintiff's claims abandoned). *But see Uddoh v. United Healthcare*, No. 16-CV-1002 (BMC) (LB), 2017 WL 563973, at *5 (E.D.N.Y. Feb. 10, 2017) (holding that *pro se* plaintiffs abandoned their claim where they failed to respond to defendant's arguments that the claim should be dismissed).

## I.    Eleventh Amendment Sovereign Immunity[10]

The Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although not clear from the terms of the [Eleventh] [A]mendment, the Supreme Court has interpreted this language to bar suit against a state by its own citizens." *Islander E. Pipeline Co., LLC v. Conn. Dep't of Envt'l Prot.*, 482 F.3d 79, 88–89 (2d Cir. 2006); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)). New York's sovereign immunity extends to the State University of New York system, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), as well as, under most circumstances, to state officials sued in their official capacities, *see Stinson v. City Univ. of N.Y.*, No. 17-CV-3949 (KBF), 2018 WL 2727886, at *5 (S.D.N.Y. June 6, 2018) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984); *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 82 (2d Cir. 2004)). Accordingly, absent an express waiver of sovereign immunity or a clear abrogation of that immunity by Congress, the Eleventh Amendment generally bars Plaintiff from suing New York State, the University, and state officials, such as Gergen and O'Neal, when sued in their official capacities, in federal court for legal and equitable relief. *See Davis v. Proud*, 2 F. Supp. 3d 460, 476–77 (E.D.N.Y. 2014).

---

[10] Whether a state's sovereign immunity under the Eleventh Amendment presents a question of subject matter jurisdiction is an open question in the Supreme Court and the Second Circuit. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998); *Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) (leaving open "whether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense"). In light of this uncertainty, the Court first addresses the sovereign immunity defenses raised by Defendants. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (noting that "subject-matter jurisdiction necessarily precedes a ruling on the merits").

## A.    Plaintiff's Claims Against New York State and the University

Supreme Court and Second Circuit precedents make clear that Congress has not abrogated state sovereign immunity by enacting the ADEA or § 1983. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000) (holding that the ADEA did not validly abrogate the States' sovereign immunity); *Dube*, 900 F.2d at 594 ("[I]t is well settled that 42 U.S.C. § 1983 does not constitute an exercise of [Congress's] authority [to abrogate sovereign immunity]."). Nor has New York State waived its Eleventh Amendment immunity and consented to suit in federal court under the NYSHRL. *See Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 537–38 (S.D.N.Y. 2014). Accordingly, all of Plaintiff's claims under the ADEA, § 1983, and NYSHRL against New York State and the University are barred by sovereign immunity and must be dismissed.

## B.    Plaintiff's Claims Against the Individual Defendants in Their Official Capacities

Plaintiff is also barred under the Eleventh Amendment from seeking monetary relief against the Individual Defendants in their official capacities. *See Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) ("The Eleventh Amendment bars the award of money damages against state officials in their official capacities."). But, under *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotation marks and citation omitted). Plaintiff thus is not barred from asserting claims for prospective injunctive relief against Defendants Gergen and O'Neal in their official capacities.[11]

---

[11] The Court notes that Defendants do not argue that Plaintiff fails to allege continuing acts of discrimination, retaliation, and hostile work environment. *See Pierre v. N.Y. State Dep't of Corr. Servs.*, No. 05-CV-275 (RJS), 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009) (noting that, before applying the *Ex parte Young* exception, a court is "specifically required . . . to examine

Plaintiff's claims against the Individual Defendants in their official capacities under the NYSHRL fail, regardless of the relief being sought, because "the Eleventh Amendment also bars suits in federal courts seeking relief, whether prospective or retroactive, against . . . state officials for their alleged violation of state law." *DeMartino v. New York*, No. 12-CV-3319 (SJF) (AKT), 2013 WL 3226789, at *6 (E.D.N.Y. June 24, 2013), *aff'd*, 586 F. App'x 68 (2d Cir. 2014).

## II.    Individual Liability Under the ADEA

There is no individual liability under the ADEA. *See Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009) (summary order) ("[The] ADEA . . . do[es] not provide for actions against individual supervisors."). Accordingly, to the extent that Plaintiff asserts ADEA claims against Gergen and O'Neal in their individual capacities, the Court dismisses any such claims.

*    *    *

In light of the foregoing analysis, Plaintiff's federal claims for prospective injunctive relief against the Individual Defendants in their official capacities and his § 1983 and state law claims against the Individual Defendants in their individual capacities are not barred by sovereign immunity and will be considered on the merits. Having addressed these threshold issues, the Court now considers the sufficiency of Plaintiff's non-barred claims.

## III.    Plaintiff's Claims Under the ADEA

"The ADEA prohibits employers from refusing to hire, discharging, or otherwise discriminating against an employee with regard to compensation, terms, conditions or privileges of employment because of age." *Hrisinko v. N.Y.C. Dep't of Educ.*, 369 F. App'x 232, 234 (2d Cir. 2010) (summary order); *see* 29 U.S.C. § 623(a)(1). "The ADEA's protections apply to

---

whether there exists an ongoing violation of federal law" (internal quotation marks and citation omitted)).

individuals 'at least 40 years of age.'" *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 166 (E.D.N.Y. 2015) (quoting 29 U.S.C. § 623(a)(1)). "In addition to prohibiting discrimination, the ADEA makes it unlawful for an employer to retaliate against an individual for opposing such age discrimination." *Id.* (quoting *Ostrowski v. Atl. Mut. Ins. Co.*, 968 F.2d 171, 180 (2d Cir. 1992)) (internal quotation marks omitted). Additionally, "[a] hostile work environment is one form of disparate treatment . . . on the basis of age under the ADEA." *Id.* (quoting *Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir.2001)). In light of the Court's sovereign immunity analysis *supra*, the Court addresses Plaintiff's ADEA discrimination, retaliation, and hostile work environment claims for prospective injunctive relief against the Individual Defendants in their official capacities.

### A. Statute of Limitations

"Under the ADEA, [the plaintiff] must file a claim with the EEOC within 300 days of the discriminatory action." *Schiappa, Sr. v. Brookhaven Sci. Assocs., LLC*, 403 F. Supp. 2d 230, 234 (E.D.N.Y. 2005); *see* 29 U.S.C. § 626(d)(1).

> If the conduct complained of in the complaint falls outside of the 300-day period, the person can recover for that conduct only if it is demonstrated that there was a continuous policy and practice of discrimination, and that one act in furtherance of the policy and practice fell within the 300-day period.

*Schiappa, Sr.*, 403 F. Supp. 2d at 234 (citing *Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir. 1999)). "Claims for a hostile work environment, which may involve a series of acts not actionable on their own, may properly include acts outside the 300-day period for purposes of establishing a hostile environment provided that an act contributing to the claim occurs within the filing period." *Id.* (internal quotation marks and brackets omitted) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

Plaintiff filed his EEOC complaint on September 29, 2017, meaning that Plaintiff's claims are time-barred to the extent that they are based on discrete acts that occurred before December 3, 2016. Because Plaintiff also asserts a hostile work environment claim, acts that occurred before December 3, 2016 may be considered as part of a continuous policy, depending on the allegations in the Amended Complaint.

### B. ADEA Discrimination

"Courts analyzing claims of employment discrimination under the ADEA apply the three-step *McDonnell Douglas* burden-shifting framework." *Jones v. Target Corp.*, No. 15-CV-4672 (MKB), 2016 WL 50779, at *4 (E.D.N.Y. Jan. 4, 2016); *see also id.* (requiring plaintiff to first prove a *prima facie* case, thereby shifting the burden to defendant to justify the adverse action, and, in that event, requiring plaintiff to show pretext). A *prima facie* discrimination claim under the ADEA requires a plaintiff to "show (1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced [an] adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). "[A]t the motion to dismiss stage, an ADEA plaintiff need not plead every element of a *prima facie* case, only facts which plausibly suggest that (1) the employer took an adverse [employment] action and (2) age was the 'but for' cause of that adverse action." *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (summary order) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86−87 (2d Cir. 2015)).

#### 1. Adverse Employment Action

An adverse employment action is "a 'materially adverse change' in the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). It is "more disruptive than a mere inconvenience or an alteration of job responsibilities."

*Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks and citation omitted). Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks and citation omitted). As there are "no bright-line rules," the Court must "pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" *Islamic Soc'y of Fire Dep't Pers. v. City of New York*, 205 F. Supp. 2d 75, 83 (E.D.N.Y. 2002) (internal quotation marks and citation omitted).

Plaintiff does not sufficiently allege an adverse employment action to support his claim of ADEA discrimination. Plaintiff alleges that the Individual Defendants denied Plaintiff a classification and compensation review in 2017.[12] Although, "[u]nder the law of the Second Circuit, the denial of a salary increase is [] sufficiently material to constitute an adverse employment action[,]" *Nidzon v. Konica Minolta Bus. Sols., USA, Inc.*, 752 F. Supp. 2d 336, 349 (S.D.N.Y. 2010); *see Giordano-Forkan v. N.Y.C. Dep't of Educ.*, No. 13-CV-6950 (GBD), 2014

---

[12] Gergen prompted Plaintiff to request a classification and compensation review on February 10, 2017 and informed Plaintiff that the dean had "signed off" on it on March 1, 2017. (Am. Compl., Dkt. 11, at 15−16.) Gergen, however, notified Plaintiff on July 17, 2017 that all raises were on hold at the University. (*Id.* at 16.) Although the Individual Defendants did not have the final authority over Plaintiff's pay according to Plaintiff's allegations, the Court construes Plaintiff's allegations in his favor and infers that the Individual Defendants, as his supervisors, could have taken part in the denial of a pay increase.

Plaintiff also complains about Gergen's actions with respect to a classification and compensation review that Plaintiff requested on his own in February 2016 and that Gergen allegedly failed to submit on Plaintiff's behalf. (*Id.* at 11−13.) However, that discrete act not only fails to constitute an adverse action, it is also time-barred. *See* discussion *supra* at III.A. Yet, like the alleged denial of a pay increase in 2017, Gergen's failure to submit Plaintiff's request for a classification and compensation review in 2016 may be considered for purposes of Plaintiff's hostile work environment claim. *Id.*

WL 5369426, at *3 (S.D.N.Y. Oct. 17, 2014) ("An action resulting in the denial of a pay raise can qualify as an adverse employment action."); *Mandel v. Champion Int'l Corp.*, 361 F. Supp. 2d 320, 326 (S.D.N.Y. 2005) ("[A] denial of a pay increase, if proven, would constitute an adverse employment action."),[13] "if the plaintiff can cite no facts suggesting that discretionary pay was awarded as a matter of course or that [he] was otherwise entitled to expect or rely on it, the employer's decision not to award [the pay] does not change the terms or conditions of Plaintiff's employment," so as to establish an adverse employment action, *Davis v. N.Y.C. Dep't of Educ.*, No. 10-CV-3812 (KAM) (LB), 2014 WL 917142, at *7 (E.D.N.Y. Mar. 7, 2014) (citation, alteration, and internal quotation marks omitted), *aff'd*, 804 F.3d 231 (2d Cir. 2015); *see Boyar v. City of New York*, No. 10-CV-65 (HB), 2010 WL 4345737, at *3 (S.D.N.Y. Oct. 28, 2010) (holding that the "failure to provide [discretionary pay] does not pass the test for an adverse employment action") (internal quotation marks and citation omitted). Here, Plaintiff does not explain how he was entitled to the pay increase at issue "as a matter of course," *see Davis*, 2014 WL 917142, at *7, nor does he allege that younger assistant curators or employees in his department with similar experience or seniority received such a classification and compensation review or a pay increase.[14]

---

[13] *See Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 582–83 (S.D.N.Y. 2013) ("Failure to provide an employee with a raise may constitute an adverse employment action where Plaintiff can show that she was denied a salary increase received by similarly situated individuals as a result of discrimination.").

[14] Plaintiff claims that "[d]uring the time period of Defendant SUNY's suspension of [his] Classification and Compensation request, they routinely awarded non contractual pay increases to other employees." (Plaintiff's Brief, Dkt. 20-6, at 7.) The Court does not consider facts alleged for the first time in moving papers, especially considering that Plaintiff has amended his complaint. *See Blue v. City of New York*, No. 16-CV-9990 (VSB), 2018 WL 2561023, at *12 n.12 (S.D.N.Y. June 4, 2018) (noting that "a plaintiff typically cannot amend a complaint through claims raised for the first time in an opposition"). Furthermore, Plaintiff does not allege that the employees who received pay increases held materially similar positions as Plaintiff. The Court notes, however, that if Plaintiff obtains evidence through discovery that supports a claim that he was denied a pay increase within the statutory period that was given to other materially similar, but younger, Biology

Indeed, Plaintiff did not apply for the classification and compensation review at issue until he was prompted by Gergen to do so on February 10, 2017. (Am. Compl., Dkt. 11, at 15.) Plaintiff was then informed on July 17, 2017, that all raises at the University were on hold, implying that no other employees received a raise that year. (*Id.* at 16.) Therefore, the Court does not find this alleged denial of a pay increase to be an adverse employment action.

Plaintiff's argument that the Individual Defendants' decisions to give Plaintiff menial tasks instead of field biology duties, Gergen's threat to change Plaintiff's hours from days to nights, and Plaintiff's duty to unlock classroom doors are adverse employment actions is unavailing as well. "[A] change in duties or job reassignment may be an adverse employment action, if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Bruder v. Jewish Bd. of Family & Children's Servs.*, No. 10-CV-5951 (MKB), 2013 WL 789231, at *5 (E.D.N.Y. Mar. 4, 2013) (citing *Galabya*, 202 F.3d at 641); *see Klein v. N.Y. Univ.*, 786 F. Supp. 2d 830, 847 (S.D.N.Y. 2011) (finding undesirable assignments and undesirable offices not adverse employment actions). However, Plaintiff does not allege how the change in his duties constituted a setback to his career. Plaintiff does not identify the specific duties he lost and how that did or would affect his career. Indeed, Plaintiff alleges that the grid assignments "ke[pt] [Plaintiff] from completing [his] primary responsibilities," indicating that Plaintiff still had some primary responsibilities, such as "pith[ing] frogs." (Am. Compl., Dkt. 11, at 20−21.)

As to the rest of Plaintiff's allegations, the Court similarly finds that they do not rise to the level of an adverse employment action. Plaintiff alleges that the Individual Defendants downgraded Plaintiff's performance evaluation (*id.* at 16−17), but fails to allege any resulting

---

program employees, he can seek permission to amend his complaint to revive his ADEA discrimination claim.

materially adverse consequence. *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 217 (E.D.N.Y. 2014) ("For purposes of an employment discrimination claim, a negative performance evaluation, absent any subsequent discipline or material impact, such as an effect on plaintiff's promotion opportunities or pay, is not an adverse employment action."). Plaintiff also alleges that Gergen demanded that Plaintiff cover the work of other employees (Am. Compl., Dkt. 11, at 20−22); that Gergen angrily yelled at Plaintiff (*id.* at 18); that the Individual Defendants did not assign Plaintiff a second desk and did not give Plaintiff access to a lounge area (*id.* at 24); that Gergen did not invite Plaintiff to give his input regarding a hiring decision relating to another Biology program employee, while permitting a less senior employee to provide input (*id.* at 26); that the younger staff were given first preference for vacations and time-off[15] (*id.* at 22); and that the Individual Defendants refused to interact directly with Plaintiff because of the instant lawsuit (*id.* at 26–27). These actions, in themselves, plainly do not rise to the level of "a materially adverse change in the terms and conditions of employment." *Sanders*, 361 F.3d at 755; *see also Cunningham v. N.Y. State Dep't of Labor*, 326 F. App'x 617, 619 (2d Cir. 2009) (summary order) (finding that the exclusion of plaintiff from a hiring decision and the reassignment of offices were not adverse employment actions); *Mills v. S. Conn. State Univ.*, 519 F. App'x 73, 75 (2d Cir. 2013) (summary order) (finding that remarks, intimidating behavior, and shunning were not adverse employment actions); *Klein*, 786 F. Supp. 2d at 847 (finding that undesirable assignments and undesirable offices were not adverse employment actions); *Chukwuka v. City of New York*, 795 F. Supp. 2d 256, 261 (S.D.N.Y. 2011) (finding that denial of a vacation request, "without any

_____

[15] Plaintiff does not allege that his requested vacation time was denied. (*See id.* at 22.) And while Plaintiff alleges that emails on December 7, 2017 show that he was punished for requesting time off for vacation, he alleges no details regarding these emails, such that it could be plausibly inferred that Plaintiff was being punished for seeking time off. (*Id.*)

indication that there was an absolute prohibition against plaintiff taking any vacation time," was not an adverse employment action), *aff'd*, 513 F. App'x 34 (2d Cir. 2013).

Thus, the Court finds that Plaintiff has failed to sufficiently allege an adverse employment action for purposes of his ADEA discrimination claim.

### 2. Inference of Discrimination

"It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances," *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009), including "[i]nvidious comments about people in the protected age class; more favorable treatment of younger employees; criticism of an employee's work performance in age-related degrading terms; a sequence of events leading to an employee's termination; or the timing of the termination," *Brenner v. City of N.Y. Dep't of Educ.*, 132 F. Supp. 3d 407, 420 (E.D.N.Y. 2015), *aff'd*, 659 F. App'x 52 (2d Cir. 2016). However, "[h]ostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable." *Sethi v. Narod*, 12 F. Supp. 3d 505, 536 (E.D.N.Y. 2014) (internal quotation marks and citation omitted).

Plaintiff does not allege any facts sufficient to give rise to an inference of discrimination with respect to any alleged adverse employment action. Plaintiff alleges that O'Neal called Plaintiff and two other older employees a "cabal" at unspecified times and regularly accused the three employees of trying to "bring down the department" and "sabotage" the labs, and that Gergen called them "toxic" as recently as around April 23, 2018. (Am. Compl., Dkt. 11, at 25.) However, these comments plainly are not age-related. Plaintiff also alleges that O'Neal made it known in 2007 that he intended to "replace the old dead wood in the department with young fresh faces" and that O'Neal regularly said, "[Plaintiff] should not have a job here" and "I don't know why [Plaintiff] is even here, he doesn't do anything." (*Id.* at 5, 8–9.) While these comments could be construed as referring to Plaintiff's age, there are no allegations showing a nexus between O'Neal's

remarks and any alleged adverse employment action, especially since neither Plaintiff nor any other older employee has been replaced by a younger employee in the twelve years since O'Neal first uttered these remarks. *See Brenner*, 132 F. Supp. 3d at 420 ("Such remarks about a protected class do not themselves give rise to an inference of discrimination . . . unless they are accompanied by other evidence of discrimination or a plaintiff demonstrates a 'nexus' between the remark and the adverse employment action.").[16] What is more, Plaintiff obtained his tenured status in 2011, *after* O'Neal and Gergen became his supervisors. (Am. Compl., Dkt. 11, at 8.)[17]

Plaintiff also fails to sufficiently allege that younger Biology program employees were treated more favorably so as to give rise to a plausible inference of age-based discrimination. Plaintiff claims that: (1) the younger employees were given a second desk, granted access to a faculty lounge/lab, and given preference regarding vacation time (*id.* at 22, 24); (2) Plaintiff was asked to help the younger employees and cover their work, when they were not asked to do so for him (*id.* at 20−22); and (3) one of the younger employees was invited to give her input regarding a hiring decision, when Plaintiff was not extended the same invitation, despite his seniority (*id.* at 26). However, critically absent from the Amended Complaint are allegations establishing that "[t]he [younger] employees' positions, job responsibilities, and reporting structures" were

---

[16] The Court "analyze[s] ADEA claims under the same framework as claims brought pursuant to Title VII." *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (internal quotation marks and citation omitted).

[17] The Court additionally notes that, in 2017, Gergen encouraged Plaintiff to seek a pay increase, even though Plaintiff asserts that Gergen did this in order that Plaintiff would be disappointed in the end, when he did not get the pay raise. (*Id.* at 16.) Plaintiff also alleges in his opposition brief that Gergen told Christina Giordano on August 27, 2018 that "no one should be in [Plaintiff's] job more than 3-5 years." (Plaintiff's Brief, Dkt. 20-6, at 5.) As explained *supra* n.14, the Court does not consider new allegations made for the first time in motion papers. *See Blue*, 2018 WL 2561023, at *12 n.12. The Court further notes that the comment was not addressed to Plaintiff and does not support an inference of discrimination.

materially similar to Plaintiff's. *See Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 21 (E.D.N.Y. 2015). Indeed, Plaintiff alleges that the younger employees in question, at the time, worked on a different floor (Am. Compl., Dkt. 11, at 24) and, in contrast to Plaintiff, seemed to be responsible for "menial tasks," some of which Plaintiff was eventually required to assist with (*see id.* at 20−21).

Therefore, Plaintiff has failed to sufficiently allege an inference of age-based discrimination for purposes of his ADEA discrimination claim.

\*     \*     \*

In sum, given that the Court finds that Plaintiff has not sufficiently alleged an adverse employment action or inference of discrimination, his ADEA discrimination claim must be dismissed.

### C.     ADEA Retaliation

"Like discrimination claims, courts analyze ADEA . . . retaliation claims under the *McDonnell Douglas* burden-shifting standard." *Ehrbar*, 131 F. Supp. 3d at 32; *Jones*, 2016 WL 50779, at \*6–7 (requiring plaintiff, under *McDonnell Douglas*, to first prove a *prima facie* case, thereby shifting the burden to defendant to justify the adverse action, and, in that event, requiring plaintiff to show pretext). To establish a *prima facie* case of ADEA retaliation, a plaintiff must establish that "(1) [he] engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Ehrbar*, 131 F. Supp. 3d at 33 (citing *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam)).

### 1.     Protected Activity

Plaintiff contends that he first engaged in protected activity in August 2016 when he gave Desiree de Figueroa permission to use his name in her EEOC complaint and to disclose to EEOC

Plaintiff's two anonymous Internal Audit complaints regarding "unfair hiring practices, nepotism, cronyism[,] and favoritism." (*See* Am. Compl., Dkt. 11, at 9−11, 14−15.) However, "mere complaints of unfair treatment by an individual are not protected speech." *D'Amore v. City of New York*, No. 17-CV-1748 (PKC) (ST), 2019 WL 2571157, at *6 (E.D.N.Y. June 21, 2019) (internal quotation marks and citation omitted). "[T]he burden is on the plaintiff to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Id.* (citation, internal quotation marks, and emphasis omitted). Plaintiff's initially anonymous complaints of unfair treatment to Internal Audit did not allege that the unfair treatment was age-based. Additionally, Plaintiff does not explain which statute de Figueroa's EEOC complaint was brought under, *i.e.*, whether it alleged age-based discrimination. Therefore, Plaintiff has not alleged sufficient facts to establish that the disclosure of his Internal Audit complaints as part of de Figueroa's EEOC complaint constitutes protected activity for purposes of his ADEA retaliation claim, which means that Plaintiff only engaged in protected activity when he complained to the OIDE on July 26, 2017 that the Individual Defendants "want[ed] to replace [him] with a younger employee."[18] (*See* Am. Compl., Dkt. 11, at 18.)

### 2. Adverse Employment Action

Courts have explained that

> [t]he contours of adverse employment action are defined more broadly under the ADEA's anti-retaliation provision than under its antidiscrimination provision. In retaliation cases, the ADEA does not define adverse employment action only in

---

[18] Plaintiff alleges that Gergen did not submit his request for a classification and compensation review in April 2016 in retaliation for being associated with de Figueroa's EEOC complaint. (Am. Compl., Dkt 11, at 12.) However, even if it could be inferred that Plaintiff engaged in protected speech by giving de Figueroa permission to use his name in her EEOC case in August 2016 (*id.* at 12, 14), Gergen's alleged failure to submit Plaintiff's compensation review request several months *earlier* clearly cannot constitute retaliation for that protected speech.

terms of discharge or demotion; rather . . . any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination could constitute retaliation.

*Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 398 (S.D.N.Y. 2011) (citations and internal quotation marks omitted). However, "'[p]etty slights, minor annoyances, and simple lack of good manners' are generally not actionable as they are not likely to deter victims of discrimination from complaining of the discrimination." *Id.* (quoting *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68 (2006)).

Defendants argue that Plaintiff fails to allege any adverse employment action taken in retaliation for his protected speech. The Court disagrees. Plaintiff has alleged at least one adverse employment action. Plaintiff alleges that beginning in September 2017, Gergen replaced most of Plaintiff's field biology duties with menial tasks, such as receiving packages, answering the door, washing benches, and assisting the younger staff. Less prestigious assignments could be "materially adverse to a reasonable employee," *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006) (citing *White*, 548 U.S. at 71), because a reasonable employee could be dissuaded from making a charge of discrimination if doing so would result in being relegated to work normally performed by more junior employees.

### 3. Causal Connection

"A plaintiff can prove causation indirectly by showing that the protected activity was followed closely by the adverse employment action." *Wheeler v. Bank of N.Y. Mellon*, 256 F. Supp. 3d 205, 220 (N.D.N.Y. 2017) (internal quotation marks and citations omitted). "Where . . . a plaintiff relies exclusively on timing to plead causation, the temporal proximity between the protective activity and adverse employment action must be 'very close.'" *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 441 (E.D.N.Y. 2015) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). "[C]ourts in this Circuit have found delays of about

six weeks to allow such an inference." *Flood v. UBS Glob. Asset Mgmt., Inc.*, No. 10-CV-374 (RJH), 2012 WL 288041, at *17 (S.D.N.Y. Feb. 1, 2012) (collecting cases).

The Court finds that Plaintiff has plausibly alleged that Gergen's decision to assign Plaintiff to more menial tasks occurred under circumstances giving rise to a reasonable inference of retaliatory intent. Though the actual date of the change in Plaintiff's assignments is unclear, the Court liberally construes the Amended Complaint to allege that it occurred between August and the beginning of September 2017, less than six weeks after Plaintiff's complaint of age-based discrimination to the OIDE on July 26, 2017.[19] This "very close" temporal proximity alone is enough to allow Plaintiff to overcome Defendants' motion to dismiss. *See Erasmus v. Deutsche Bank Americas Holding Corp.*, No. 15-CV-1398 (PAE), 2015 WL 7736554, at *12 (S.D.N.Y. Nov. 30, 2015) (holding that a temporal gap of one month "support[s] a causal inference of retaliation sufficient to survive a motion to dismiss").

Therefore, Plaintiff's ADEA retaliation claim against the Individual Defendants in their official capacities for prospective injunctive relief[20] can proceed.

### D. ADEA Hostile Work Environment

"The analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII." *Giordani v. Legal Aid Soc'y*, No. 17-CV-5569 (ILG), 2018 WL 6199553, at *2 (E.D.N.Y. Nov. 27, 2018) (quoting *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)). A hostile work environment claim alleges a "workplace [that]

---

[19] Plaintiff alleges that Gergen created the grid in August 2017 and replaced most of Plaintiff's field biology duties with menial tasks beginning in September 2017. (Am. Compl., Dkt. 11, at 20.)

[20] Plaintiff seeks prospective injunctive relief preventing Defendants "from engaging in any harassing and/or retaliatory activities." (Am. Compl., Dkt. 11, at 28.)

is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the [plaintiff's] employment." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (internal quotation marks and citation omitted). To state a claim for a hostile work environment, a plaintiff must plead that the conduct: "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's age." *Fordham v. Islip Union Free Sch. Dist.*, 662 F. Supp. 2d 261, 271 (E.D.N.Y. 2009) (internal quotation marks and brackets omitted) (citing *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). Courts assess hostility based on the totality of circumstances and might consider: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Lebowitz v. N.Y.C. Dep't of Educ.*, No. 15-CV-2890 (LDH) (ST) & 15-CV-5548 (LDH) (ST), 2017 WL 1232472, at *14 (E.D.N.Y. Mar. 31, 2017). To survive a motion to dismiss, "a plaintiff need only plead facts sufficient to support the conclusion that [he] was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse." *Patane*, 508 F.3d at 113 (internal quotation marks, alterations, and citations omitted).

The Court finds that Plaintiff has plausibly alleged a claim for hostile work environment under the ADEA. The Amended Complaint alleges that O'Neal proclaimed his intention to "replace the old dead wood in the department with young fresh faces" when he joined the Biology program in 2007[21] (Am. Compl., Dkt. 11, at 8–9) and regularly said "[Plaintiff] should not have a

_____

[21] Although initially uttered twelve years ago, the Court considers O'Neal's statement, which he repeated thereafter, as providing context for, and informing Plaintiff's perception of, the

job here" and "I don't know why [Plaintiff] is even here, he doesn't do anything" (*id.* at 5). O'Neal and Gergen called Plaintiff and two other older employees "toxic" and a "cabal." (*Id.* at 25.) There were various incidents, between 2015 and the filing of the Amended Complaint in September 2018, where: (1) Plaintiff's efforts to apply for a raise or a promotion were thwarted (*id.* at 9−11, 11–13, 15−16); (2) Plaintiff's performance evaluations were downgraded (*id.* at 13−14, 16−17); (3) Plaintiff's responsibilities were replaced with menial tasks (*id.* at 20); (4) Plaintiff was not given access to a faculty lounge area, when the younger employees were (*id.* at 24); (5) Plaintiff was not given his own desk, when the younger employees were given theirs (*id.*); (6) Plaintiff was not invited to give his input on a hiring decision, when a younger, far more junior employee was (*id.* at 26); (7) Plaintiff was required to cover the younger employees' work, when the younger employees were not required to do the same for Plaintiff (*id.* at 22−23); and (8) Plaintiff was threatened with a work schedule change from day- to night-shift (*id.* at 25).

Drawing all inferences in Plaintiff's favor, the Court finds that the combination of these acts gives rise to a plausible inference that the conditions of Plaintiff's employment were altered for the worse based on age-based hostility. *See Kassner*, 496 F.3d at 240 (finding sufficient allegations of undesirable assignments of work shifts and repeated degrading comments, "including, but not limited to, 'drop dead,' 'retire early,' 'take off all of that make-up,' and 'take off your wig'" (alteration omitted)).

Accordingly, Plaintiff's ADEA hostile work environment claim can proceed against the Individual Defendants in their official capacities for prospective injunctive relief.[22]

---

Individual Defendants' alleged hostility toward older employees, which also manifested itself in other comments and actions by the Individual Defendants.

[22] Plaintiff seeks prospective injunctive relief preventing Defendants "from engaging in any harassing and/or retaliatory activities." (Am. Compl., Dkt. 11, at 28.)

## IV.    Plaintiff's Constitutional Claims

Plaintiff asserts that he is bringing claims pursuant to "42 U.S.C. § 1983 and the 14th [Amendment] Due Process [C]lause to the Constitution (retaliation by SUNY[23])."[24]  (Am. Compl., Dkt. 11, at 3.)   Plaintiff argues that he will be deprived of his property interest because of "Defendant SUNY's attempt to make [him] resign."  (Plaintiff's Brief, Dkt. 20-6, at 6.)

The Fourteenth Amendment to the United States Constitution states in part that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "To allege a procedural due process claim under the Fourteenth Amendment, the two threshold questions are[: (1)] whether the plaintiff possessed a liberty or property interest

---

[23] Plaintiff seems to be addressing his claims as to all Defendants when he refers to "Defendant SUNY."  (*See, e.g.*, Plaintiff's Brief, Dkt. 20-6, at ECF 5–6 ("Defendant SUNY retaliated against me by (1) negatively changing the conditions of my employment, (2) failing to submit my Classification and Compensation reviews, and (3) tampering with the 2016-2017 Evaluation.").)   Because of Plaintiff's *pro se* status, the Court liberally construes Plaintiff's submissions to allege a § 1983 claim against all Defendants.  *See Triestman*, 470 F.3d at 474.

[24] In his opposition brief, Plaintiff argues that "Defendant SUNY's attempt to make [Plaintiff] resign, because of [his] age, is a violation of the Due Process Clause of the Fourteenth Amendment" and that "Defendant SUNY's action denying [Plaintiff's] right to participate in the Classification and Compensation process, which was agreed upon by the Union and Defendants SUNY, is in violation of the Equal Protection Clause of the Fourteenth Amendment."  (Plaintiff's Brief, Dkt. 20-6, at 6–7.)   Because Plaintiff cannot amend his pleadings through motion papers, the Court does not recognize any discrimination claim under the Due Process Clause or any violation of the Equal Protection Clause.  *See Blue*, 2018 WL 2561023, at \*12 n.12 (noting that "a plaintiff typically cannot amend a complaint through claims raised for the first time in an opposition").   Furthermore, Plaintiff's arguments fail on the merits.   The Court construes Plaintiff's argument regarding "Defendant SUNY's attempt to make [Plaintiff] resign" (Plaintiff's Brief, Dkt. 20-6, at 6), as stating a constructive discharge claim.  Plaintiff cannot state such a claim, however, because he has not resigned.  *Green v. Brennan*, 136 S. Ct. 1769, 1781 (2016) ("For a constructive discharge, the claim does not exist until the employee resigns.").  As for Plaintiff's Equal Protection claim, the Court finds that Plaintiff failed to state a claim for the same reasons as set forth *supra* under his ADEA discrimination claim, *i.e.*, that he has not sufficiently alleged any adverse action or one that occurred under circumstances giving rise to an inference of discrimination.  *Shapiro v. N.Y.C. Dep't of Educ.*, 561 F. Supp. 2d 413, 422 n.2 (S.D.N.Y. 2008) ("An equal protection claim for age discrimination pursuant to § 1983 is analyzed under the same standards as a claim made pursuant to the ADEA.").

protected by the United States Constitution or federal statutes[;] and, if so, [2] what process was due before the plaintiff could be deprived of that interest." *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 157 (E.D.N.Y. 2018) (citation, internal quotation marks, and alterations omitted), *reconsideration denied*, No. 18-CV-1314 (ADS) (AKT), 2019 WL 1433095 (E.D.N.Y. Mar. 29, 2019).

"Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). Public employees have property interests in their employment against acts of termination, suspension without pay, and diminution in rank. *Barnes v. Pilgrim Psychiatric Ctr.*, 860 F. Supp. 2d 194, 203 (E.D.N.Y. 2012) (citing *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005)). However, tenure does not entitle a plaintiff to a specific assignment or working conditions. *See id.* at 204 ("[I]t has been held by courts in this district that employees who are reassigned to report to locations where they are prevented from performing their usual functions, while continuing to receive full salary and benefits, state no claim for deprivation of a Constitutionally protected right."); *Ramberran v. Dellacona*, No. 07-CV-304 (CBA), 2008 WL 905217, at *4 (E.D.N.Y. Mar. 31, 2008) (holding that plaintiff did not allege a deprivation of property interests when he was reassigned to administrative duties); *see also Bernheim v. Litt*, 79 F.3d 318, 322–23 (2d Cir. 1996) ("The New York Court of Appeals has stated that the concept of tenure in the teaching profession does not entitle a teacher to a specific class or proscribe assignment to proper duties of a teacher other than classroom teaching of a specific subject." (internal quotation marks and citation omitted)). Additionally, "[d]iscretionary salary increases are not a form of property protected by the Constitution against deprivation without due process of law." *McRae v. N.Y.S. Thruway Auth.*,

687 F. App'x 22, 23 (2d Cir. 2017) (summary order) (internal quotation marks and citation omitted); *see also Henneberger v. Cty. of Nassau*, 465 F. Supp. 2d 176, 192−93 (E.D.N.Y. 2006) (holding that the plaintiff did not have a property interest in increased compensation due under the collective bargaining agreement).

Plaintiff has not alleged that he has been deprived of a property interest.[25] Plaintiff does not allege that he lost his employment, received less pay, or suffered a demotion. Instead, Plaintiff alleges his working conditions and assignments were altered and that he was denied discretionary salary increases. However, these allegations are insufficient to state a due process violation. *See Bernheim*, 79 F.3d at 323 (holding that alterations of working conditions "cannot provide a basis for a constitutional claim"); *McRae*, 687 F. App'x at 23; *see also Henneberger*, 465 F. Supp. 2d at 191−93 (dismissing the plaintiff's due process claim for a wage freeze).

Accordingly, Plaintiff's § 1983 claim is dismissed for failure to state a claim.[26]

## V.     State Law Claims

In addition to his viable federal claims, Plaintiff asserts corresponding state law claims under the NYSHRL. (*See* Am. Compl., Dkt. 11, at 3.) In light of the Court's sovereign immunity

---

[25] To the extent that Plaintiff alleges that the removal of his supervisory duties in 2011 or the denial of a promotion to Assistant Director of Biology program in March 2015 constitute property interests, the Court notes that "[c]laims under § 1983 are governed by a three-year statute of limitations in New York," *Vega*, 801 F.3d at 79, and that these actions are thus time-barred and cannot form the basis of a § 1983 claim.

[26] Plaintiff does not argue a substantive due process violation in his opposition brief. To the extent that Plaintiff also makes a substantive due process claim, the Court finds that the allegations do not rise to the level required to state such a claim. *See Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) ("For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." (internal quotation marks and citations omitted)).

analysis *supra*, Plaintiff's state law claims may only be asserted against the Individual Defendants in their individual capacities.

"The NYSHRL allows for individual liability under two theories: [(1)] if the defendant has 'an ownership interest' in the employer or has 'the authority to hire and fire employees,' [N.Y. Exec. Law § 296(1)], [or (2)] if the defendant aided and abetted the unlawful discriminatory acts of others, N.Y. Exec. Law § 296(6)." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521–22 (S.D.N.Y. 2015) (internal quotation marks and citations omitted). Thus, "a co-worker who 'actually participates in the conduct giving rise to a discrimination claim' [can] be held liable under the NYSHRL even [if] that co-worker lacked the authority to either hire or fire the plaintiff."[27] *Feingold v. New*, 366 F.3d 138, 158 (2d Cir. 2004). Crucially, however, the liability of an employer must be established as a predicate to individual liability for aiding and abetting. *See Jain v. McGraw-Hill Cos.*, 827 F. Supp. 2d 272, 277 (S.D.N.Y. 2011) ("[T]he NYSHRL and NYCHRL require 'that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor.'" (quoting *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999))); *see also France v. Touro College*, No. 14-CV-4613 (NGG) (CLP), 2016 WL 1105400, at *9 (E.D.N.Y. Feb. 16, 2016) ("[I]ndividual liability under the NYSHRL cannot attach without corresponding liability for the employer enterprise."), *report and recommendation adopted*, 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016).

---

[27] There is a division of authority on the question of whether an individual may be held liable under the NYSHRL as an aider and abettor of *their own* discriminatory conduct. *De Figueroa v. New York*, No. 17-CV-436 (PKC) (LB), 2019 WL 4221181, at *17 n.26 (E.D.N.Y. Sept. 5, 2019) (collecting cases). Because Plaintiff's NYSHRL claims fail on other grounds, the Court need not resolve this question.

Here, Plaintiff has expressly characterized the University as his employer. (*See* Am. Compl., Dkt. 11, at 3 (naming Plaintiff's place of employment as "Stony Brook University")).) Though the Individual Defendants hold authority over Plaintiff in the workplace, they clearly lack an ownership interest in the University, as well as the power to hire and fire Plaintiff. (*See id.* at 8 (stating that Plaintiff has received "permanent appointment (tenure)"); *id.* at 9 (describing a "hiring committee").)[28] In light of these allegations, Plaintiff must first establish a viable claim of liability against the University under § 296(1) of the NYSHRL; only then can he assert claims against the Individual Defendants under § 296(6) for aiding and abetting violations of the NYSHRL. As discussed *supra*, however, Plaintiff cannot do so because the University and New York State are immune from NYSHRL suits under the Eleventh Amendment. Accordingly, Plaintiff's claims against the Individual Defendants under the NYSHRL must be dismissed for failure to state a claim.[29] *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015) ("Here, as [the p]laintiffs cannot state a claim against CUNY under [the] NYSHRL and NYCHRL because the claims are barred by the Eleventh Amendment, [the p]laintiffs also cannot state a claim against the Individual CUNY Defendants in their individual capacities as aiders and abettors."); *see also Ren Yuan Deng v. N.Y. State Office of Mental Health*, No. 13-CV-6801 (ALC), 2015 WL

---

[28] Although Plaintiff alleges that O'Neal stated that he wanted to "replace the old dead wood in the department with young fresh faces" (Am. Compl., Dkt. 11, at 8−9), this is not enough from which to plausibly infer that O'Neal had the ability to hire or fire Plaintiff. Indeed, the fact that Plaintiff obtained tenured status in 2011, four years after O'Neal became his supervisor, suggests that O'Neal lacked that authority.

[29] Because Plaintiff's state law claims are dismissed in their entirety on these grounds, the Court need not decide whether and to what extent these claims would be limited or foreclosed by the doctrine of election of remedies. *See Moodie v. Fed. Res. Bank of N.Y.*, 58 F.3d 879, 884 (2d Cir. 1995); *see also* N.Y. Exec. Law § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, . . . unless such person had filed a complaint [with the NYSDHR] or with any local commission on human rights . . . .").

221046, at *5 (S.D.N.Y. Jan. 15, 2015) (dismissing a plaintiff's NYSHRL claim against the individual defendants because she could not establish employer liability against the defendant in light of the Eleventh Amendment).

Accordingly, Plaintiff's NYSHRL claims against the Individual Defendants in their individual capacities are dismissed.

## CONCLUSION

For the reasons stated, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's claims for prospective injunctive relief against the Individual Defendants in their official capacities for ADEA retaliation and hostile work environment shall proceed to discovery. All other claims are dismissed. Given that no claims remain against Defendants University and New York State, they are terminated as parties to this action.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 22, 2019
       Brooklyn, New York